No. 24-13529

IN THE

# United States Court of Appeals for the Eleventh Circuit

ADAM SINDELL

*Plaintiff–Appellant*

v.

LATONYA COACH AND JACOB CLECKNER

*Defendants–Appellees*

**On Appeal from the United States District Court for the Middle District of Georgia in 5:22-cv-00365-CAR**
**Senior Judge C. Ashley Royal**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

JORDAN JOHNSON,

JESSICA BURTON,
*Counsel of Record.*
BERNARD & JOHNSON, LLC,
*Five Dunwoody Park, Suite 100,*
*Atlanta, Georgia 30338*
*404-477-4755; fax 404-592-9089;*
*Alex@Justice.Law;*
*Jessica@Justice.Law*

*Adam Sindell v. Latonya Coach, et. al.*

Appeal Case No. 24-13529

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Complying with Federal Rule of Appellate Procedure 28(a)(1) and 11th Cir. R. 26.1-1, the following is a complete list of all persons and entities known to have an interest in the outcome of this appeal.

Bernard & Johnson, LLC

Bernard, Catherine

Boerger, Kyle

Burton, Jessica

Cleckner, Jacob

Coach, LaTonya

Johnson, Jordan

Judge C. Ashley Royal, District Court Judge

Waymire, Jason

Williams, Terry

Williams & Waymire

/s/    Jessica Burton
JORDAN JOHNSON,
Georgia Bar No. 673643
Jessica Burton,
Georgia Bar No. 196253
Counsel of Record.

C–1 of 3

*Adam Sindell v. Latonya Coach, et. al.*

Appeal Case No. 24-13529

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not desire oral argument.

# TABLE OF CONTENTS

Corporate Disclosure Statement…………………………………………………C-1

Statement Regarding Oral Argument…………………………………………C-3

Table of Contents……………………………………………………………iii

Table of Citations……..………………………………………………………...iii

    Cases………………………………………………………………………iv

    Statutes…………………………………………………………….....v

Jurisdictional Statement…………………………………………………………vi

Statement of the Issues…………………………………………………………..1

Statement of the Case……………………………………………………………2

    i.   Course of Proceedings…………………………………………………...1

    ii.   Statement of Facts…………………………………………………………2

    iii.   Standard of Review…………………………………………………………8

Summary of Argument……………………………………………………………8

Argument and Citation of Authority……………………………………………..8

    I. The district court erred by granting qualified immunity to Appellees…….9

    II.   The district court erred in determining that Cleckner's use of excessive force against a pretrial detainee was not clearly established at the time of the incident……………………………………………………..……………..9

III.  The district court erred in dismissing Appellant's failure to intervene claim against Appellee Coach…………………………………………...15

IV. The district court erred in dismissing Appellant's First Amendment claim under 42 U.S.C. § 1983 because Appellant's grievance was protected speech and the cause of Appellees' violations against him………………………...16

Conclusion…………………………………………………………………...18

Certificate of Compliance With Rule 32(a)…………………………………….21

Certificate of Service……………………………………………………………...23

## TABLE OF CITATIONS

**1.     Cases:**                                          **PAGE**

*Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005)………………………………17

*Coley v. Lucas Cnty.*, 799 F.3d 530 (2015)…………………………………………13

*DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2005)………..…....17

*GJR Invs., Inc. v. County of Escambria*, 132 F.3d 1359 (11th Cir. 1998)…………9

*Graham v. Connor*, 490 U.S. 386 (1989)……………………………………...11, 13

*Hinson v. Clinch County Bd. Of Educ.*, 231 F.3d 821 (2000)………………………8

*Ingraham v. Wright*, 430 U.S. 651 (1976)…………………………………………...13

*Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022)……………………….…………..9

*Joseph v. Bartlett*, 981 F.3d 319 (2020)…………………………………………...15

*Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010)…………………………9

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015)…………………………………9-13

*Patel v. City of Madison*, 959 F.3d 1330 (11th Cir. 2020)…………………………...12

*Saucier v. Katz*, 533 U.S. 194 (2001)……………………………………………..12

**2.      Statutes (Cont.):                    PAGE**

28 U.S.C. § 1331……………………………………………………………...5

28 U.S.C. § 1446……………………………………………………………...5

28 U.S.C. § 1291……………………………………………………………...5

42 U.S.C. § 1983………………………………………………………….5, 6, 9, 15

## JURISDICTIONAL STATEMENT

(A)      The district court's subject matter jurisdiction is founded on federal question under 28 U.S.C. § 1331 with pendent state law claims. The case arises under **42 U.S.C. § 1983 and pendent state law claims.** Appellant and Appellees are Georgia residents. The action was timely removed to the United States District Court for the Middle District of Georgia under 28 U.S.C. § 1446 by Defendants.

(B)      This Court has jurisdiction under 28 U.S.C. § 1291 and arises from the appeal of a district court judgment.

(C)      On **September 26, 2024** the district court granted a motion for summary judgment and entered a final judgment on all claims in favor of the Appellees. The appeal was timely noticed on **October 23, 2024.**

(D)      This appeal is from a final judgment that disposes of all parties' federal claims.

### STATEMENT OF THE ISSUES

Appellant's appeal presents the following issues:

Whether Appellees are entitled to qualified immunity under 42 U.S.C. § 1983?

Whether the trial court erred in determining that Appellee Cleckner's use of excessive force against a pretrial detainee was not clearly established at the time of the incident?

Whether Appellant's claim against Appellee Coach for failing to intervene survives summary judgment?

Whether Appellees' conduct violated Appellant's First Amendment rights?

### STATEMENT OF THE CASE

Appellant Adam Sindell filed this lawsuit against Appellees Latonya Coach and Jacob Cleckner, as well as dismissed Defendant Kyle Boerger, pursuant to 42 U.S.C. § 1983 and state law claims based on excessive force in violation of the Fourteenth Amendment and First Amendment retaliation against Appellant. Additionally, Appellant raised a failure to intervene claim against Appellant Coach.

### i.      Course of Proceedings

Appellant filed his Complaint in the Superior Court of Houston County on July 13, 2022. R. 1-1. Appellees removed the case to the Middle District of Georgia in the Macon Division September 9, 2022. *Id. See also* R. 3.

1

On August 14, 2023, Appellees filed a joint motion for summary judgment. R 13. The following day, Appellees filed the depositions of Appellant, Appellee Cleckner, and Appellee Coach. R. 17, 18, and 19. Appellant filed his Brief in Opposition to Appellees' joint motion for summary judgment on September 11, 2023. R 21. Appellees filed a reply brief in support of their joint motion for summary judgment on October 9, 2023. On September 26, 2024, the district court granted Appellees' motion for summary judgment, and entered a final judgment against Appellant. R 24 and 25. Appellant filed a timely Notice of Appeal on October 23, 2024. R 26.

### ii.        Statement of Facts

Adam Harlen Sindell ("Mr. Sindell" or "Appellant"), was a pretrial detainee being housed in the Houston County jail by the Sheriff's Office in June of 2020. R. 21 at Exhibit 1. He was described as being a "playful" individual, including with the jailers, and not "a mean person". R. 19 at 88:7-16; 90:1-2. During this time, Mr. Sindell encountered LaTonya Coach ("Coach" or "Appellee Coach"), Jacob Cleckner ("Cleckner" or "Appellee Cleckner") (together "Appellees") and Kyle Boerger ("Boerger") who were employed as jailers with the Houston County Sheriff's Office. R. 21 at Exhibit 1; R. 17, 18, and 19. Generally each pod could hold up to 85 inmates, however during the COVID

pandemic, which is the time frame in which the relevant events in this case occurred, pods were limited to about 50 inmates. R. 19 at 55:19 – 56:4.

While the jail had rules for inmates, these rules were arbitrarily enforced. For example, while some jailers were somewhat relaxed on certain rules, Appellee Coach was stricter. R. 17 at 86:12-24. This led to a large portion of the inmates in Coach's pod being on lockdown at one time, as inmates began doing things that would be permitted by their usual jailers that Coach would not permit. *Id.*; *See also Id.* at 87:8-14.

As a jailer with Houston County, Coach once criticized Mr. Sindell for allegedly having too many books in his cell. R. 17 at 92:5-8. In Coach's opinion, inmates as a whole "have a bad habit of hoarding books in their room." R. 19 at 91:16-18. According to Mr. Sindell, Coach took all of the books in his cell, including his Bible, and threw them in the trashcan instead of removing any disallowed books. R. 17 at 92:5 – 93:10. During this encounter, Coach allegedly pulled Mr. Sindell's mattress out from under him, flipping him over and injuring his arm when it hit the metal bed. *Id.* at 92:10-16. As a result of this encounter, Coach refused to let Mr. Sindell out of his cell for the entire day, which is more time than would have generally required a disciplinary report for the inmate. *Id.* at 93:11-19.

After more than four hours on lockdown, Mr. Sindell was finally allowed out of lockdown and permitted to use the kiosk, which he used in order to file a grievance against Coach for the encounter throwing away his books, including his Bible. *Id.* at 93:20 – 94:7. To Mr. Sindell's understanding, Coach was reprimanded for both pulling the mattress out from under him, as well as having thrown away his Bible. *Id.* at 95:11-18.

On June 30, 2020, which Mr. Sindell believes was the day after having his grievance against Coach substantiated, Coach put Mr. Sindell on lockdown for the entire day. *Id.* at 94:6-7. To Mr. Sindell's recollection, Coach had more inmates on lockdown. *Id.* at 95:23-25. Coach verbalized that the reason for the stricter rules for the day was due to inmates having "people that want to write grievances on [her]," at which time she pointed to Mr. Sindell's door. *Id.* at 96:1-13. Coach further stated that if the inmates did not like the new rules, then they should "go talk to Room One[,]" which is where Mr. Sindell was housed, as "[h]e's the reason that this is happening." *Id.* at 97:11-15.

While Mr. Sindell was left on lockdown all day, due to filing a grievance against Coach, he requested toilet paper in order to leave his cell so that he could get a message to his fiancée about what was happening, and asking that she call the detention center about the situation. *Id.* at 105:20 – 106:4. Mr. Sindell hoped that his fiancée would inform the detention center that he was being mistreated by

Coach. *Id.* at 107:4-5. While focused on typing his message, Mr. Sindell did not hear Coach's alleged instructions to him or the pod to lockdown. *Id.* at 115:19 – 116:5. Upon hanging up the kiosk, Mr. Sindell saw Appellee Cleckner and Boerger coming in. *Id.* at 106:4-7. At that time, Plaintiff recalled hearing Defendant Coach telling Cleckner and Boerger: "We got one needs his ass kicked." *Id.* at 106:20. As Cleckner advanced toward Mr. Sindell, Mr. Sindell peacefully walked back toward his cell, which was also toward Defendant Cleckner, with his arms at his side and his hands flat with the palms facing upwards, posing no threat. R. 14 at Pod Video at 14:07:55. Cleckner told Mr. Sindell to lock down. *Id.* Mr. Sindell recalls assenting to the command by verbally saying "Yes sir." R. 17 at 122:1-6.

At this time, Cleckner grabbed Mr. Sindell from below the buttocks in an alleged effort to "take him to the ground." R. 18 at 77:22-24; R. 14 at Pod video at 14:07:55; R. 21 at Exhibit 1, p. 11. This method resembled a "form tackle," which is used in football, and not a technique that is taught in Use of Force training. R. 21 at Exhibit 1, p. 14, 21. As Cleckner essentially body-slammed Mr. Sindell, Boerger appeared to try to stop this attack by trying to grab Mr. Sindell's upper torso around the back and shoulders in an unsuccessful attempt to prevent his head from hitting the ground. R. 14 at Pod Video at 14:07:55. Despite this attempt, Mr. Sindell's head, along with his neck and shoulder, violently hit the

concrete ground before the rest of his body. *Id.*; *see also* R 21 at Exhibit 1, p. 11. Mr. Sindell had a moment of visible pain where he can be seen clutching his head with his hand and moaning, and then became unconscious. *Id.* While unconscious, Cleckner and Boerger attempted to place handcuffs on Mr. Sindell, while Coach did nothing but stand to the side and watch. *Id.*

Mr. Sindell then began having seizures, at which point Appellees and Boerger called for the medical unit to respond to the pod, where a blanket was then placed under Mr. Sindell's head in an attempt to prevent his head from hitting the concrete ground further, and then transported to the medical unit.

Prior to this physical take down, Mr. Sindell was neither physically, nor verbally aggressive, nor had he ever had a history of being an aggressive or threatening inmate. *Id.*; *see also* R. 19 at 59:17-23; R. 14 at Pod video at 14:07:46; R. 17 at 107:8-12; R. 18 at 56:14-18. Mr. Sindell further suffered injuries to his wrist and mouth, and suffered from a low-grade fever of 99.9 degrees Fahrenheit upon the initial evaluation. R. 21 at Exhibit 1. Despite ongoing pain for the months that Mr. Sindell remained in Houston County Sheriff's Office's custody, he was mainly treated with items such as ibuprofen, despite multiple grievances submitted in writing by Mr. Sindell about his ongoing pain. R. 21 at Exhibits 1 and 2.

An internal investigation was conducted by Houston County Sheriff's Office, which was led by Lt. George Runyon who worked in the Office of Professional Standards. *See Id.* at Exhibit 1. The investigation discovered that Cleckner used a move to take down Mr. Sindell which was neither approved, nor taught in excessive force training. *Id.* at 14, 21.

The report even concedes that the take down is difficult to watch in the pod video. *Id.* at 22. It further conceded that Boerger's allegations in his interview that Mr. Sindell had clenched jaws was not verifiable on the video. *Id.* at 21. Apparently, no body camera footage exists to verify any further details of the incident, as none of the appellees, nor Boerger, admit to utilizing their body cameras, despite there being a policy to have body cameras recording if there was a possibility of an incident. R. 18 at 79:19 – 80:21, 86:9-24; R. 19 at 77:17 – 78:20.

While the internal investigation report contained multiple contradictions to Appellees' accounts of what occurred, it also contained factual inaccuracies, such as stating that after the take down, Boerger and Cleckner returned Mr. Sindell to his cell. *Id.* at 14; R. 14 at Pod video at 14:07:55 onward.

In the aftermath of the incident, Mr. Sindell has continued to suffer with pain, as well as his memory of the incident not being clear due to his seizures and unconsciousness. R. 17 at 83:10-14; 108:2-7. Furthermore, Mr. Sindell has had to

7

limit his work since the incident, as he normally does labor-intensive side jobs that he is no longer able to do due to the continued pain. R. 17 at 166:17-25.

### iii.    Standard of Review

The granting of a motion for summary judgment is reviewed de novo, with the court drawing "all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Hinson v. Clinch County Bd. Of Educ.*, 231 F.3d 821, 826 (2000).

SUMMARY OF THE ARGUMENT

The district court erred in dismissing Appellant's federal claims under 42 U.S.C. § 1983 against Appellees by (1) granting Appellees qualified immunity; (2) finding that Appellees' violation of Appellant's rights against excessive force was not clearly established; and (3) dismissing Appellant's First Amendment claims.

ARGUMENT AND CITATION OF AUTHORITY

Summary judgment is proper when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c); *Hinson*, 231 F.3d at 826 (2000). In reviewing all pleadings, depositions, and other evidence together, the court must construe "all reasonable inferences in favor of the nonmoving party" without making determinations on credibility or weighing the evidence. *Id.* Moreover, the could must "consider the

entire record, but 'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id.*

For the reasons set forth below, the district court erred in granting summary judgment to Appellees and dismissing Appellant's claims under 42 U.S.C. § 1983.

## I.    The district court erred in dismissing Appellant's claims under 42 U.S.C. § 1983 by granting Appellees' qualified immunity.

Under the qualified immunity doctrine, "officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998)). If the defendant officer meets his burden of showing that his conduct was within his discretionary duties, the burden shifts to the plaintiff to show that the defendant officer violated a right, and that the right was clearly-established at the time of the defendant officer's conduct. *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022). For the reasons set forth below in this brief, the district court erred in granting qualified immunity to Appellees and granting summary judgment on all of Appellant's claims.

## II.    The district court erred in determining that Cleckner's use of excessive force against a pretrial detainee was not clearly established at the time of the incident.

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the United States Supreme Court laid out the analysis for determining when the use of force exceeds that which is necessary in violation of the Fourteenth Amendment of a pretrial detainee. Under the *Kingsley* factors, the analysis is an objective reasonableness standard, which "turns on the 'facts and circumstances of each particular case[,]' including 'what the [defendant] knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397. This analysis includes the consideration of six factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.*

In the present case, the district court correctly concluded that a jury could determine that under the circumstances, Cleckner's use of force exceeded the needs under the *Kingsley* factors. R. 24 at 15.

First, Mr. Sindell was not "a sufficiently severe security threat, [nor did] the Officers perceive [Mr. Sindell] to be a sufficient security threat." *Id.* Mr. Sindell further kept his palms open, and was not actively resisting. *Id.* Additionally, Mr. Sindell "was the only inmate in the common area with the officer." *Id.* Furthermore, the district court noticed that "Cleckner took [Mr. Sindell] to the

ground in less than 10 seconds from the time he entered L-Pod and only one second after Cleckner and Boerger came in close contact with [Mr. Sindell]." *Id.* at 15-16.

Appellant contends that further factors weigh in his favor, and that the district court erred in finding that Mr. Sindell's "injuries were not extensive." *Id.* at 15. Cleckner's take down caused Mr. Sindell's head to hit the concrete floor of the common area of L-Pod, and immediately lost consciousness and seized with convulsions. R. 14 at 14:07:55.

Given that Mr. Sindell had no history of seizures, and the fact that he lost consciousness, a jury could find that his injuries were very severe. R. 17 at 139:8-14.

Nevertheless, the district court correctly determined that Appellees may have violated Mr. Sindell's rights against the excessive use of force, and that the evidence is sufficient for a jury to determine that Cleckner's force was unreasonable. R. 24 at 15.

However, the district court did err in finding that this Fourteenth Amendment excessive force violation was not clearly established law, and thus in granting immunity to Appellees. R. 24 at 16. The Supreme Court "[has] stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer" when engaging in force against

11

inmates "in circumstances that are tense, uncertain, and rapidly evolving." *Kingsley*, 576 U.S. at 400 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989)). In determining a "clearly established" right, the Court made it clear that, in absence of a materially factually similar case, the test of whether the officer had sufficient notice of the right "would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194 (2001). Appellant meets that burden here.

A plaintiff may establish that a right is clearly established in one of three ways: (1) "[Pointing] to a materially similar case that has already decided that what the police officer was doing was unlawful"; (2) show "that a broader, clearly established principle should control the novel facts in this situation"; or (3) "establish that the officer's 'conduct [was] so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the [officer], notwithstanding the lack of caselaw". *Id.* at 1252 (quoting *Patel v. City of Madison*, 959 F.3d 1330, 1342 (11th Cir. 2020)).

While there is no specific case law that deals with facts of a pretrial detainee being body slammed while in custody of the sheriff, the broader principle of such use of force is shown in *Kingsley*, as well as other cases. Abusing or physically attackingan unarmed, pretrial detainees is a clearly established rights violation; no reasonable officer would find that to be permissible.

12

Not only has the Supreme Court established an objective analysis under the *Kingsley* factors to determine where a pretrial detainee's Fourteenth Amendment rights against excessive force are violated,[1] but the courts have repeatedly dealt with the issue of body slamming arrestees, as well as sentenced prisoners that require a higher standard than would a pretrial detainee. In these instances, it is clearly established "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley*, 576 U.S. at 400 (citing to *Ingraham v. Wright*, 430 U.S. 651, 671-72 (1976); *Graham*, supra, at 395; and quoting 4 W. Blackstone, Commentaries at 300 (clearly stating that "[I]f the offence be not bailable, or the party cannot find bail, he is to be committed to the county [jail] . . . [b]ut . . . only for safe custody, and not for punishment")).

By 2015, the principle of excessive force claims under the Fourteenth Amendment used against pretrial detainees was clear and established. *Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (2015). That clearly-established standard requires an inquiry into "whether the plaintiff shows 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Id.* (quoting *Kingsley*, 576 U.S. at 396-97). In this inquiry, "[a] court (judge or jury) cannot apply this standard mechanically[,] . . . [as] objective reasonableness turns on the 'facts and

---

[1] The Supreme Court in <u>Kingsley</u> set forth an objective standard for excessive force claims by pretrial detainees, which has been consistently applied in subsequent cases, making it a well-established legal principle.

circumstances of each particular case.'" *Id.* at 397 (quoting *Graham*, 490 U.S. 386, 396 (1989)). In other words, the courts must apply this clearly-established principle to each set of new facts given by any case raising an excessive force claim under the Fourteenth Amendment.

In the present case, Mr. Sindell has put forth sufficient evidence as a genuinely dispute of material fact as to the conduct of the Appellees in this case, particularly whether Appellees "purposely or knowingly" used unreasonable force against him. There's clear video of a brutal takedown.

Additionally, Appellees arbitrarily enforced rules at the Houston County jail, and Mr. Sindell was being targeted for having made complaints against Appellee Coach. R. 17 at 86:12-24, 92:5 – 93:10. Mr. Sindell's complaints also included instances of Coach pulling his mattress out from under him, causing him to flip over and injure his arm upon hitting the metal bed frame. *Id.* at 92:10-16. Upon being let out of his cell after more than four hours on lockdown from this instance, Mr. Sindell filed a grievance against Coach in relation to these events, only to be met with Coach putting him on lockdown for the entire day for filling the grievance. *Id.* at 94:6-7.

Coach then sounded to the other inmates that the reason for the stricter rules that day was due to Mr. Sindell having filed a grievance against her, making sure to point to Mr. Sindell's door while making the announcement. *Id.* at 96:1-13. Upon

14

being unjustly locked down, Mr. Sindell was able to get out of his cell to use the kiosk to contact his family to inform them as to what was going on, where Appellee Coach called in Appellees Cleckner and Boerger, and informing them that "[w]e got one who needs his ass kicked" when referring to Mr. Sindell. *Id.* at 106:20.

In response to Appellee Coach's statements, Cleckner and Boerger approached and attacked Mr. Sindell, who Appellees did not perceive as threatening given Mr. Sindell's demeanor and having no history of being violent. R. 19 at 6-14. At that time, Cleckner used a football tackle method, one that is neither not taught in the Use of Force training.. R. 21 at Exhibit 1 at 11, 14, 21; Pod video at 14:07:55; R. 18 at 77:22-24. This resulted in Mr. Sindell losing consciousness and convulsing with seizures, despite having no medical history of seizures prior to this event. *Id.*

Given these facts, Mr. Sindell has met his burden in showing that Appellees violated clearly-established principles against excessive force against pretrial detainees. A jury could find that Cleckner provided more than gratuitous force against Mr. Sindell in furtherance of Coach's vendetta against him, and pursuant to her instruction that Mr. Sindell "[needed] his ass kicked." R. 17 at 16-22. To suggest that this conduct does not violate clearly-established law goes against the very core of a pretrial detainee's rights against excessive force under the

Fourteenth Amendment and current precedent. For these reasons, the district court erred in granting immunity to Appellees and granting summary judgment.

### III.    The district court erred in dismissing Appellant's failure to intervene claim against Appellee Coach.

Under 42 U.S.C. § 1983, an officer may be liable for failing to intervene when (1) that officer was present on scene of a constitutional violation, (2) knew that a fellow officer was violating the plaintiff's constitutional rights, (3) had reasonable opportunity to prevent the harm, but (4) chose not to act. *Joseph v. Bartlett*, 981 F.3d 319, 343 (2020). An officer may also be liable for conspiring with and assisting with a rights violation. Appellant meets all requirements here.

"Bystander liability requires more than mere presence in the vicinity of the violation; 'we also consider whether an officer "acquiesced in" the alleged constitutional violation.'" *Id.* In the present case, Coach was not only in the vicinity of where the violation occurred, but conspired with and called Cleckner and Boerger to the vicinity for the specific purpose of the violation. R. 14; R. 17 at 106:4-22; R. 18 at 75:9-12; R. 19 at 14-21. Additionally, Coach had more than mere knowledge that the violation was occurring, but was the one who explicitly stated to Cleckner and Boerger that Mr. Sindell "[needed] his ass kicked." R. 17 at 16-22.

The district court erred in finding that Coach did not have the opportunity to stop the violation, because not only did she instigate the violation, but she had the

opportunity to tell Cleckner and Boerger not to follow through as she watched

them approach Mr. Sindell to attack him. R. 17 at 67:17-20, 71:1-4.

Given Cleckner's history of being overly physical with inmates, Coach knew

the likelihood of him injuring Mr. Sindell was likely, and yet she not only called

upon Appellee Cleckner to act, but failed to intervene to prevent the injury. R. 17 at

71: For these reasons, the district court erred in granting summary judgment.

**IV.** **The district court erred in dismissing Appellant's First Amendment claims under 42 U.S.C. § 1983 because Appellant's grievance was protected speech and the cause of Appellees' violations against him.**

To prevail on a First Amendment Retaliation claim, a plaintiff must show

that (1) his speech or act was constitutionally protected, (2) the defendant's

retaliatory conduct adversely affected the protected speech, and (3) there is a

causal connection between the retaliatory actions and the adverse effect on speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Additionally, where the

claim alleges that the retaliatory conduct is a criminal charge, a plaintiff must

further plead lack of probable cause. *DeMartini v. Town of Gulf Stream*, 942 F.3d

1277, 1291 (11th Cir. 2005).

First, Mr. Sindell filed a grievance against Coach for throwing away his

Bible when he allegedly had "too many books" in his cell. R. 17 at 112:1-3.

Secondly, Coach placed Plaintiff on lockdown because of the grievance he filed

against her, and ignored Plaintiff on the intercom when he attempted to inquire as

17

to why he was on lockdown. *Id.*; *see also Id.* at 10-23. That's multiple incidents of retaliation for speech.

Furthermore, Coach allegedly told the entire dormitory in which Mr. Sindell was housed that they would not be able to pass extra food trays and that they would eat in their cells "all because [they] got people [such as Mr. Sindell] that want to write grievances on [her]," which she stated while pointing at Plaintiff's door. R. 17 at 96:8-13. Coach further allegedly told the other inmates that if they did not like it, "go talk to Room One. He [Mr. Sindell] is the reason this is happening." *Id.* at 97:11-15.

In furtherance of her vendetta against Mr. Sindell, Coach then told Cleckner and Boerger that Mr. Sindell "[needed] his ass kicked." R. 17 at 106:16-22. Together, these facts are sufficient for a jury to determine that Appellees' violations of Mr. Sindell's rights were due to the grievance he filed against Coach, which shows that Mr. Sindell has brought sufficient evidence to overcome a motion for summary judgment on a First Amendment Retaliation claim.

## CONCLUSION

The district court erred in granting Appellees qualified immunity because Appellees violated Appellant's rights in the course of their discretionary duties, and those rights were clearly established law at the time of Appellees' conduct. The district court further erred in finding that Appellant's right against being body

slammed onto a concrete floor while incarcerated as a pretrial detainee was not clearly established law. By the time of Appellees' conduct, the principle of excessive force claims under the Fourteenth Amendment used against pretrial detainees was clear and established.

Additionally, the district court erred in dismissing Appellant's failure to intervene claim against Appellee Coach because Appellee Coach was not only present at the scene of the constitutional violation and new that the conduct violated Appellant's constitutional rights, but specifically called her colleagues to the scene for the purpose of violating Appellant's constitutional rights when telling them that Appellant "[needed] his ass kicked." Furthermore, given Appellee Cleckner's reputation for being excessively physically aggressive against inmates, and watching him advance toward Appellant, Appellee Coach had the opportunity to prevent the harm and chose not to do so.

Finally, the district court erred in dismissing Appellant's First Amendment Retaliation Claim because Appellant's grievance filed against Appellee Coach was protected speech, she locked him down and sought to get inmates and colleagues to become physically aggressive against Appellant in retaliation to his grievance, and encouraging Appellee Cleckner to "kick [Appellant's] ass" was in furtherance of that retaliation, and Appellee Cleckner body slammed Appellant in an unapproved take down of Appellant that is not taught in Excessive Force training, the force of

19

which was significant to cause extensive injuries to Appellant, including knocking him unconscious and causing him seizures.

For these reasons, and the others listed above, the district court improperly granted summary judgment in favor of Appellees and its judgment must be reversed.

Respectfully submitted this 17th day of February, 2025.

s/ Jessica Burton

JORDAN JOHNSON,
Georgia Bar No. 673643

JESSICA BURTON
Georgia Bar No. 196253
*Counsel of Record*

BERNARD & JOHNSON, LLC
*Five Dunwoody Park, Suite 100*
*Atlanta, Georgia 30338*
*404-477-4755; fax 404-592-9089*
*Alex@Justice.Law*
*Jessica@Justice.Law*

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type–volume limitation of Fed. R. App. P.

   32(a)(7)(B) because:

   X   this brief contains [*4,589*] words, excluding the parts of the brief exempted by Fed. R. Civ. P. 32(a)(7)(B)(iii), *or*

   this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. Civ. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P

   32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   X   this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2021* in *14-point Times New Roman,* or

   this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

s/ Jessica Burton

JORDAN JOHNSON,
Georgia Bar No. 673643

JESSICA BURTON
Georgia Bar No. 196253
*Counsel of Record*

BERNARD & JOHNSON, LLC

*Five Dunwoody Park, Suite 100*
*Atlanta, Georgia 30338*
*404-477-4755; fax 404-592-9089*
*Alex@Justice.Law*
*Jessica@Justice.Law*

CERTIFICATE OF SERVICE

I have today served a copy of this **APPELLANT'S BRIEF** on the following

parties by First-Class Mail, correct postage prepaid and addressed:

Jason Waymire
Williams & Waymire
4330 S. Lee Street
Bldg. 400, Ste. A
Buford, GA 30518

I have electronically filed this APPELLANTS' BRIEF with the Clerk of Court

using the CM/ECF system, which will automatically send e-mail notification of

such filing to the following attorneys of record:

Jason Waymire
Williams & Waymire
4330 S. Lee Street
Bldg. 400, Ste. A
Buford, GA 30518

Dated <u>17th day of February, 2025.</u>

/s/ Jessica Burton
JORDAN JOHNSON,
Georgia Bar No. 673643

JESSICA BURTON
Georgia Bar No. 196253
*Counsel of Record*

BERNARD & JOHNSON, LLC

*Five Dunwoody Park, Suite 100*
*Atlanta, Georgia 30338*
*404-477-4755; fax 404-592-9089*
*Alex@Justice.Law*
*Jessica@Justice.Law*